[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiffs from an assessment of damages made by the defendant with respect to the taking of a portion of their property in the Town of Newington as shown on a map entitled: "Town of Newington, Map Showing Land Acquired from Thomas F. Kilfoil, et al, by the State of Connecticut, Central Connecticut Expressway, Scale 1" = 80', June 1989, Robert W. Gubala, Transportation Chief Engineer-Bureau of Highways". The map was introduced into evidence as Exhibit A and the portion taken was also described in the complaint. A revision of the map dated August 8, 1989 was introduced into evidence as Exhibit 1.
The parties stipulated that the date of the partial taking was September 28, 1989, and that damages as assessed by the defendant in the sum of $1,029,000 had been deposited with the clerk of the Superior Court and withdrawn by the plaintiffs.
The plaintiffs' property is on the west side of Fenn Road in Newington opposite Holmes Road and south of Eagle Drive. It is in the southwest corner of the town and near the New Britain town line. It contains 58.44 acres, more or less, and has a frontage of about 1,187 feet on Fenn Road. To the north of the plaintiffs' property the land is developed with single family dwellings and to the south there is a luxury apartment complex. The east side of Fenn Road is developed with industrial and business establishments. The land slopes up 50 feet from Fenn Road to a depth of 300 feet, slopes up more gradually to a depth of 1200 feet and then slopes generally downward to the west and south. It is vacant land, mostly wooded, and approximately 20 acres at the westerly end is in a designated inland-wetlands area. About 36 acres, including all of the frontage, are situated in a Residential Planned (R-P) zone. About 15 acres at the southwest of the property are in an Industrial (I) Zone. CT Page 2563 The remaining land, about 7.44 acres at the northwest of the property, is in the Residential-20 (R-20) zone. One and two-family dwelling units are permitted in an R-20 zone. In an R-P zone, there may be apartments, multi-family condominiums, detached single-family houses, semi-detached dwellings, attached dwellings and, as a special exception, housing for the elderly. An I-zone permits various kinds of industrial and business uses.
The property is within three miles of three major highways. The highest and best use of the property is for development with apartments or condominiums, assuming that zone changes could be obtained for the portions of the property in the I and R-20 zones.
The take consists of 23.8 acres at the westerly end of the property. The take included all of the 20 acres, more or less, of wetlands. It included all of the land in the I-zone and all but a very small portion of the land in the R-20 zone.
Peter R. Marsele, a qualified real estate appraiser, testified for the plaintiffs. It was his opinion that the highest and best use of the property is for apartments or condominiums. To arrive at his opinion of the fair market value of the property before and after the take, he utilized comparable sales. He found no sales which he thought were comparable in Newington and used two sales in West Hartford and one in Simsbury. Two of the sales were in 1987 and one was in 1988. Each of the sales was on a heavily-traveled road, although none was across the street from an industrial zone. In none of the sales were there any wetlands. Marsele did no traffic studies to compare volume or type of traffic to the traffic on Fenn Road. None of the comparable sales was close in area to the area of the subject property. In Marsele's opinion, developers base the price they are willing to pay for this kind of property on the permitted density. It was his opinion that the necessary zone changes and conservation commission permits probably could have been obtained. No attempt had been made by anybody to obtain any such changes or permits. Marsele estimated that there was a 90% chance that the zone changes and permits could have been obtained. He thought that the entire 50.44 acres could have been used for density purposes and that the wetlands could be used for open space and recreation. He opined that a $20,000 unit price was warranted, based upon comparable sales and he reduced this to $18,000 per unit to reflect his estimate of a 90% probability that the entire property would have been approved. He used a density of 6,000 square feet of land per unit taken from the copy of the zoning regulations he had in file and concluded that there could have been 424 units at 7.26 units to the acre. He computed the fair market value before the take at $7,632,000. After the take, Marsele opined that a developer could build 251 units. Using CT Page 2564 the same unit value, he computed the after take fair market value at $4,518,000. Damages were thus computed at $3,114,000.
After Marsele came to know that the zoning regulations in Newington had been amended and that at the date of taking, the density requirement was 8,000 square feet of land per unit, he revised his figures. Using the same unit value, and utilizing the entire 58.44 acres, he concluded that there could have been 318 units before the take and computed the fair market value at $5,724,000. After the take, he concluded that there could be 188 units and computed the after take value at $3,384,000. Damages were thus $2,340,000.
William J. O'Brien, a real estate appraiser, was called by the defendant. O'Brien's testimony was offered solely to rebut Marsele's opinion that there were no comparable sales in Newington and vicinity. The subject take was the second take from the plaintiffs' property. The first take was on September 23, 1987, and O'Brien was an appraiser retained by the plaintiffs in their appeal from the assessment of damages on that occasion. He had used the comparable sales method of valuation and found four sales which in his opinion were comparable. Three of these sales were in Newington and one was in West Hartford. One of the Newington sales occurred in 1985 and the other three sales occurred in 1987. O'Brien's testimony was not probative in our evaluation of the property.
As noted earlier in this opinion, nothing has ever been done to obtain zone changes or any permits or approvals of any kind. Marsele talked to an unidentified man in the building inspector's office in Newington, showed him a sketch and asked if the land could be entirely used in a site plan application. According to Marsele, the unidentified man simply replied, "Yes". Whether and to what extent the wetlands may be used is within the discretion of the Conservation Commission. This circumstance casts into considerable doubt the before the taking value placed upon the property by Marsele.
The defendant did not call an appraiser as an expert witness on valuation.
We are not persuaded by the evidence that the entire wetlands area could be used for density purposes. After viewing the property and giving due consideration to the report and testimony of the plaintiffs' appraiser and our own knowledge of the elements establishing value, we are of the opinion that the damages of $1,029,000 assessed by the defendant were fair and reasonable. Judgment may enter accordingly. No costs are taxed. CT Page 2565
George D. Stoughton William C. Bieluch John M. Alexander, State Trial Referees.